## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DARA WRIGHT,
an individual,                                           Case No.:

      Plaintiff,

v.

W.S BADCOCK CORPORATION.
a Florida for-profit corporation,

      Defendant.

_____/

## <u>VERIFIED COMPLAINT</u>

**COMES NOW**, Plaintiff, DARA WRIGHT (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant, W.S. BADCOCK CORPORATION (hereinafter, "Defendant").  In support thereof, Plaintiff states:

## <u>INTRODUCTION AND PRELIMINARY STATEMENT</u>

This is an action for damages brought by an individual consumer for Defendant's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA"), wherein Defendant repeatedly communicated directly with Plaintiff in an attempt to collect a consumer debt despite Defendant receiving notice and possessing actual knowledge of Plaintiff's legal counsel legal representation of Plaintiff with respect to such debt as well as said legal counsel's contact information, and Defendant also repeatedly made telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system, predictive telephone dialing system, or an artificial or pre-recorded voice despite Defendant lacking Plaintiff's prior express consent to make such calls.

## JURISDICTION, VENUE AND PARTIES

1.      Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1331, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

2.      Venue in this District is proper because Defendant transacts business in this District, and the conduct complained of occurred in this District.

3.      At all material times herein, Defendant's conduct complained of below occurs in Pinellas County, Florida.

4.      At all material times herein, Plaintiff is an individual residing in Pinellas County, Florida.

5.      At all material times herein, Defendant is a for-profit corporation existing under the laws of the state of Florida with its principal place of business located at 200 North Phosphate Boulevard, Mulberry, Florida 33860.

## FCCPA STATUTORY STRUCTURE

6.      The FCCPA is a state consumer protection statute, modeled after the Fair Debt Collection Practices Act, 15 United States Code, Section 1692, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

7.      The FCCPA imposes civil liability on a creditor that "offers or extends credit creating a debt or to whom a debt is owed…" and prohibits any person from engaging in particular conduct in connection with collecting consumer debts.  Fla. Stat. § 559.55(5).

8.      Specifically, the FCCPA prohibits unlawful debt collection "communications" with

consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*." Fla. Stat. § 559.55(2) (emphasis added).

9.      For example, the FCCPA prohibits a person from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibits a person from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt.  *See* Fla. Stat. §§ 559.72(7) and (18).

## TCPA STATUTORY STRUCTURE

10.      Congress enacted the TCPA in an effort to restrict pervasive use of automated or prerecorded telephone calls that invade consumers' personal privacy.  Pub L. 102-243, § 2, Dec. 20, 1991, 105 Sta. 2394 (1), (5), and (10).

11.      Congress intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*. at §§ (5) and (12).

12.      Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using any automated telephone dialing system or artificial or prerecorded voice without the recipient's prior express consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

13.      Under the TCPA, the court may increase the damage award up to three (3) times, or up to $1,500.00, for each willful or knowing violation of the TCPA.  *Id* at § 227(b)(3)(C).

14.      Furthermore, the Restrictions on Use of Telephone Provision, 47, United States Code, Section 227(b)(1) prohibits any person:

3

(A) To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, … or any service for which the called party is charged for the call.

15.     Additionally, Plaintiff alleges that Defendant continued to call her cellular telephone using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV") in violation of the FCC Rule, 47 C.F.R. Section 64.1200(a)(1).

16.     One of the regulations prescribed under the TCPA is the Federal Communications Commission ("FCC")'s rule, 47 C.F.R Section 64.1200 ("FCC Rule"), that implements the TCPA. The FCC originally promulgated the FCC Rule in 1992, since which time it has subsequently been amended as telecommunications technology has changed.

17.     In its current state, the FCC Rule, 47 C.F.R. § 64.1200, provides, in relevant part, that:

(a) No person or entity may:

(1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice;
. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

## GENERAL ALLEGATIONS

18.     At all material times herein, Defendant is a "creditor" as defined by Florida Statutes, Section 559.55(5).

4

19.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8).

20.     At all material times herein, Defendant attempts to collect a debt, specifically an alleged balance due on a retail credit account referenced by account number ending in -4925 (hereinafter, the "Debt").

21.     At all material times herein, the Debt is a consumer debt, an obligation resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

22.     At all material times herein, Defendant is a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

23.     At all material times herein, Defendant's conduct with respect to the Debt complained of below qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

24.     At all material times herein, Defendant acted itself or through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and/or insurers.

25.     All necessary conditions precedent to the filing of this action occurred or Defendant waived or excused the same.

## FACTUAL ALLEGATIONS

26.     Defendant made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number 727-XXX-2843 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system

(hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

27.     Plaintiff is the possessor, controller, and regular user of a Cellular Telephone with assigned telephone number 727-XXX-2843.

28.     At no time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

29.     Further, if Defendant contends it did possess such consent at one point in time, Plaintiff nonetheless revoked any alleged prior existing consent the moment she demanded that Defendant stop calling her Cellular Telephone and again revoked any alleged prior existing consent the moment Plaintiff advised Defendant that she was represented by an attorney with respect to the Debt and provided Defendant with said attorney's contact information.

30.     Additionally, if Defendant contends the below-referenced phone calls were made for "informational purposes only," Defendant nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

31.     On or about February 7, 2019, Plaintiff retained Leavengood, Dauval & Boyle, P.A., d/b/a LeavenLaw (hereinafter, "Undersigned Counsel") with respect to her debts generally, including the Debt.

32.     On or about February 7, 2019, Undersigned Counsel sent a facsimile transmission (i.e., fax) to Defendant regarding Plaintiff and the Debt (hereinafter, "Notice of Representation). Please see attached a true and correct copy of said Notice of Representation labeled as Exhibit "A."

33.     Specifically, the Notice of Representation advised Defendant of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt, provided Defendant with

Undersigned Counsel's contact information, and advised Defendant that all direct communication to Plaintiff regarding the Debt must cease and should instead be directed to Undersigned Counsel's office.  *See* Ex. A.

34.     Moreover, the Notice of Representation explicitly revoked any purported prior express consent permitting Defendant to make telephone calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.  *See* Ex. A,

35.     Defendant received the Notice of Representation.

36.     Despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and despite Defendant possessing Undersigned Counsel's contact information, Defendant continued to communicate directly with Plaintiff, as further detailed below, and made each such communication in an attempt to collect the Debt directly from Plaintiff.

37.     Moreover, Defendant made each of the below-referenced calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV despite lacking Plaintiff's prior express consent to do so.

38.     On or about February 27, 2019, at approximately 12:52 p.m. E.T., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

39.     On or about March 11, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular

Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

40.      On or about March 13, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

41.      On or about March 15, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

42.      On or about March 20, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

43.      On or about March 21, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail.

44.      On or about March 25, 2019, at approximately 1:35 p.m. E.T., despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with

respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

45.     On or about March 27, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

46.     On or about March 28, 2019, at approximately 3:31 p.m. E.T. despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

47.     On or about May 14, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

48.     On or about May 16, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

49.     On or about May 17, 2019, despite Defendant possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and possessing

9

Undersigned Counsel's contact information, Defendant made a call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV and left a voicemail with an artificial or pre-recorded voice.

50.     Defendant made each of the above-referenced telephone calls from telephone number 800.346.9275 in an attempt to collect the Debt directly to Plaintiff.

51.     On several of the aforementioned calls, Plaintiff answered the call, said "hello," but heard no live person or representative on the other line, but rather dead air.

52.     As a direct result of Defendant's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that retaining Undersigned Counsel with respect to the Debt and advising Defendant of the same was wholly ineffective, and that Defendant's frequent, repeated, and invasive Debt collection attempts would simply have to be endured.

53.     It is Defendant's corporate policy to use an ATDS, a PTDS, and/or an APV when attempting to collect consumer debts, including the Debt (hereinafter, "Corporate Policy").

54.     Defendant employed its Corporate Policy of using an ATDS, a PTDS, or an APV when Defendant made the telephone calls to Plaintiff's Cellular Telephone as alleged in this case.

55.     Defendant made the calls to Plaintiff's Cellular Telephone with no effective way for Plaintiff to remove her Cellular Telephone number from Defendant's telephone dialing system.

56.     Defendant made calls, or caused calls to be made, to Plaintiff with no effective way for Defendant to remove Plaintiff's Cellular Telephone number from Defendant's telephone dialing system.

57.     Defendant's Corporate Policy provides no effective way for a consumer to effectively revoke any prior existing consent to be called by Defendant using an ATDS, PTDS,

and/or APV to make Defendant cease calling a cellular telephone.

58. Defendant's Corporate Policy and procedures are structured as to continue to call individuals like Plaintiff using an ATDS, a PTDS, and/or an APV, regardless of how many times said individuals request that Defendant cease calling a cellular telephone regarding a debt owed to Defendant.

59. Upon information and belief, Defendant engaged in a pattern and practice of unlawful debt collection and invasion of privacy, repeatedly and willfully calling consumers' cellular telephones in an attempt to collect debts, using an ATDS, a PTDS, and/or an APV despite lacking consumers' prior express consent to do so.

60. Defendant willfully, knowingly, and repeatedly undertakes these practices to increase revenue and profitability at the direct expense of consumers' livelihoods and privacy.

61. Based on Defendant's pattern and practice described herein, this Court should grant significant and substantial punitive damages sufficient enough to prevent Defendant from continuing this pattern and practice and to deter such similar future conduct in the Middle District of Florida.

62. Plaintiff states that the imposition of a substantial punitive damage award is required in order to force Defendant to comply with well-established federal and state privacy and debt collection laws.

63. Plaintiff has not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued barrage of Debt collection calls, to record the specifics (as done above) on each and every call made to Plaintiff. Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA and TCPA. Further, Defendant is in the best position to determine and ascertain the

number and methodology of calls made to Plaintiff.

64.    Plaintiff retained Undersigned Counsel for the purpose of pursuing this matter against Defendant, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

65.    Despite having advised Defendant of Undersigned Counsel's representation of Plaintiff with respect to the Debt, Defendant continues to attempt to collect the Debt directly from Plaintiff in violation of the FCCPA and the TCPA.

66.    Defendant's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Federal and State law.

67.    Given Defendant's conduct and its apparent intention and ability to continue to collect the Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

68.    Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendant.

69.    United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made, directly or indirectly, using any ATDS or APV to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

70.    Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made, directly or indirectly, using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

71.    As of the date of this complaint, Defendant did not initiate a law suit in an effort to

collect the Debt.  Likewise, no final judgment with respect to the Debt has been obtained by, or transferred to, Defendant.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)**

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

72.     Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting a consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

73.     Despite possessing actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant subsequently and repeatedly attempted to collect the debt directly from Plaintiff.

74.     Specifically, via the Notice of Representation, Defendant received notice and possessed actual knowledge of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt, possessed Undersigned Counsel's contact information, received notice that Plaintiff explicitly revoked any purported prior express consent to receive calls from Defendant or its agents on her Cellular Telephone made using an ATDS, PTDS, and/or APV, and received notice that any communications regarding the Debt should be directed to Undersigned Counsel's office.

75.     More specifically, despite Plaintiff's request that Defendant cease calling her regarding the Debt and despite possessing actual knowledge of Undersigned Counsel's representation with respect to the Debt, Defendant repeatedly made calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV between February 7, 2019 and May 17, 2019, making *at least* twelve (12) calls directly to Plaintiff's Cellular Telephone.

13

76.     Defendant's conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully call Plaintiff's Cellular Telephone in an attempt to collect the Debt, despite Plaintiff's demands that such calls cease, leading Plaintiff to believe that Defendant could and would continue to communicate directly with Plaintiff— circumventing Undersigned Counsel's legal representation of Plaintiff with respect to the Debt— unless and until Plaintiff made payment to Defendant on the Debt.

77.     Defendant's willful, flagrant and vulgar violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

78.     As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT TWO:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

79.     Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing actual knowledge that Plaintiff retained Undersigned Counsel with respect to the Debt and after possessing Undersigned Counsel's contact information.

80.     Specifically, Plaintiff provided Defendant with actual knowledge that Undersigned Counsel represented Plaintiff with respect to the Debt and provided Defendant with Undersigned Counsel's contact information via the Notice of Representation.

81.     Despite possessing actual knowledge of Undersigned Counsel's representation of

Plaintiff with respect to the Debt and Undersigned Counsel's contact information, Defendant subsequently made repeated calls directly to Plaintiff between February 27, 2019 and May 17, 2019 in its attempt to collect the Debt, making *at least* twelve (12) calls directly to Plaintiff's Cellular Telephone.

82.     As such, Defendant attempted to collect the Debt directly from Plaintiff, a known represented party in violation of Florida Statutes, Section 559.72(18).

83.     As a direct and proximate result of Defendant's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT THREE:**
**TELEPHONE CONSUMER PROTECTION ACT-**
**VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)**

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

84.     Defendant is subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an ATDS, PTDS, and/or APV to make a call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

85.     At no time herein did Defendant possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

86.     If Defendant contends it possessed such consent, Plaintiff revoked any such purported consent the moment Plaintiff advised Defendant that she was represented by an attorney with respect to the Debt and provided Defendant with said attorney's contact information.

87.     Additionally, if Defendant contends the referenced phone calls were made for "informational purposes only," it nevertheless lacked the required prior express consent necessary

to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

88.    Between February 27, 2019 and May 17, 2019, despite lacking Plaintiff's prior express consent and despite Plaintiff requesting that Defendant cease calling her regarding the Debt, Defendant repeatedly called Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV, making *at least* twelve (12) calls to Plaintiff's Cellular Telephone.

89.    The telephone calls made by Defendant complained of herein are the result of a repeated willful and knowing violation of the TCPA.

90.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered:

a.    The periodic loss of her Cellular Telephone service and the cost associated therewith;

b.    Lost material costs associated with the use of peak time minutes allotted under her Cellular Telephone service contract; and

c.    Stress, anxiety, loss of sleep, invasion of privacy, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendant's conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Defendant declaring that Defendant violated the FCCPA;

b.    Judgment against Defendant for maximum statutory damages for violations of the FCCPA;

c.    Judgment providing injunctive relief, prohibiting Defendant from further

engaging in conduct that violates the FCCPA and the TCPA;

      d.      Judgment against Defendant for statutory damages in the amount of $500.00 for each of Defendant's telephone calls that violated the TCPA;

      e.      Judgment against Defendant for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which Defendant acted knowingly and/or willfully;

      f.      Actual damages in an amount to be determined at trial;

      g.      An award of attorneys' fees and costs; and

      h.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendant and demands that Defendant and its affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Sean E. McEleney*

**☐ Ian R. Leavengood, Esq., FBN 0010167**
**[X] Sean E. McEleney, Esq., FBN 0125561**
**☐ Kelly C. Burke, Esq., FBN 0123506**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
smceleney@leavenlaw.com
kburke@leavenlaw.com
*Attorneys for Plaintiff*

17

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA )
                         )
COUNTY OF Pinellas )

Plaintiff DARA WRIGHT, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

Dara Wright

Subscribed and sworn to before me
this 26 day of July , 2019.

Notary Public

My Commission Expires:

Proof of I.D.: FLORIDA DRIVERS LICENSE

Luis Bumpas
Notary Public
State of Florida
My Commission Expires 08/17/2021
Commission No. GG 135889